JEFFREY W. BATES, P.J.
Mathew Brunk (Claimant) is disabled and was receiving Social Security Disability Insurance (SSDI) payments when he collected unemployment benefits. He now appeals two decisions, consolidated in this appeal, from the Labor and Industrial Relations Commission (Commission). It determined that he was ineligible for benefits, overpaid and subject to a penalty during the 15 weeks at issue. The Commission decided that Claimant was ineligible for unemployment benefits because: (1) he was "not available for full time work" during that entire period; and (2) he was not "able to work," in that he was "restricted from working" seven of those weeks while he recovered from shoulder surgery. Based upon this eligibility determination, the Commission also decided that Claimant was overpaid benefits and had to pay a 25% penalty because he "willfully failed to disclose or falsified facts that would have disqualified" him from receiving benefits and that he "willfully failed to report earnings" correctly for a four-hour orientation period.
Claimant presents two points for decision. Point 1 contends the Commission's decision that Claimant was not "available for work" or "able to work" was based upon an incorrect interpretation and application of § 288.040.1(2).[1] Alternatively, Point 2 contends there was not "competent and substantial evidence in the record" to support the Commission's findings that *920 Claimant: (1) was not available for work or able to work; (2) "willfully failed to disclose or falsified facts" that disqualified him; and (3) "willfully failed to report earnings." Point 1 is dispositive because we agree with Claimant that the Commission incorrectly interpreted and applied § 288.040.1(2) by deciding Claimant was neither available for work nor able to work. Accordingly, the issues raised in Point 2 are moot and need not be addressed. We reverse and remand for further proceedings consistent with this opinion.
Factual and Procedural Background
Claimant suffered a traumatic brain injury from a car accident and has been receiving SSDI benefits since 1986. He was employed at Silver Dollar City performing "custodial type work[,]" such as picking up trash, mopping floors and washing dishes. Claimant's work was seasonal, and he was laid off from work on December 30, 2015. He had a recall date with Silver Dollar City of April 2, 2016. Because of this recall date, Claimant was not required to make work search contacts from January 3, 2016 through April 2, 2016. A witness for the Division of Employment Security (Division) testified that excusing those employees with a recall date from the work search requirement allowed a seasonal employer to retain trained employees during downtimes. According to the Division witness, because the employer could potentially call the employee back prior to the scheduled recall date, the employee still had to be available for work and able to work each week during the recall period.
Claimant had shoulder surgery at the end of February 2016, and his right arm was put in a brace. On Friday, March 5, 2016, Claimant attended his orientation at Silver Dollar City, accompanied by both his job coach and case manager for his traumatic brain injury. According to Claimant, his doctor released him to work "light duty" using only his left hand. Because Claimant was taking pain medication as the result of his shoulder surgery, he failed his drug test at orientation. The following Monday, Claimant provided Silver Dollar City with documentation that included his prescription for the pain medication and a work release showing lifting restrictions for his right arm. After providing this documentation, Claimant believed Silver Dollar City was going to accommodate his right-arm restriction and let him know when he would be on the work schedule again. Even with limited use of his right arm, Claimant believed that he was able to continue performing the work that he had done previously at Silver Dollar City. At the time of Claimant's orientation, Silver Dollar City was not open to the public.[2] In the weeks that followed, however, Silver Dollar City never called Claimant back to work.
Claimant continued to report "no work earnings" every week to the Division, from January 3, 2016 through April 9, 2016, except for one week-the week of his orientation. At that time, Claimant was unaware that he was getting paid for orientation. Once he received a paycheck for 4.08 hours of orientation, he reported the income, but by then, the report was two weeks late. Claimant also mistakenly reported *921 the net pay on his paycheck of $30.03, instead of his gross pay of $34.68.
After Claimant's recall date of April 2, 2016 had passed and Silver Dollar City had not called him back to work, Claimant inquired about other job opportunities. Claimant testified that he inquired at Lowe's, Country Mart and Casey's, but no one was hiring. Claimant was paid unemployment benefits through the week ending April 16, 2016.
According to the Division witness, Claimant's failure to timely and accurately report the income he received for orientation triggered an audit of Claimant's claim for unemployment benefits. In a May 2016 statement, Claimant told the Division that he had been receiving SSDI benefits since 1986 and was seeking only part-time work to keep his earnings under $1,100 a month in order to keep his SSDI. A deputy for the Division determined that Claimant was ineligible for unemployment benefits because he was "not available for work" since he was "not seeking full time employment."
Claimant appealed this decision and participated in a telephone hearing in July 2016.[3] Claimant testified that he received SSDI benefits and was limited to earning under $1,100 a month. The record is unclear as to how many hours Claimant actually worked per week, and he was not asked how many hours he could work to stay under the SSDI threshold. Based on his March 2016 paycheck of $34.68 gross pay for 4.08 hours, Claimant's calculated wage was $8.50 an hour. At that wage, he could work 30 hours per week and still keep his monthly earnings under $1,100. Claimant testified that, except for his monthly earning limitation, he had no other restrictions regarding days and times he was available to work each week.
The Appeals Tribunal of the Division (Tribunal) determined that Claimant was not eligible for unemployment benefits. According to the Tribunal, Claimant "was not willing to earn over $1100, because he did not want to lose that [SSDI] income. Therefore, claimant restricted his work and his work searches to part time work." The conclusions of law stated that "[d]uring the weeks of January 3, 2016, to April 16, 2016, the claimant was restricted from working full time due to his long term disability of severe memory loss and his receipt of SSDI. During the weeks of January 3, 2016, to April 16, 2016, the claimant was not able, willing, and ready to accept suitable full time work." The conclusions of law also stated that "[d]uring the weeks of February 28, 2016, through April 16, 2016, claimant was restricted from working while he had shoulder surgery and was under a doctor's care during his recovery."
Thereafter, the Division decided that: (1) Claimant was overpaid $1,053 in benefits from January 3, 2016 to April 16, 2016; and (2) Claimant had to pay a 25% penalty because the overpayment was "the result of claimant fraud." The Tribunal affirmed this second determination because: (1) Claimant "willfully failed to report his earnings" of $34.68 gross earnings (instead of the reported $30.03 net amount) in the correct week; and (2) he "willfully failed to disclose or falsified facts that would have disqualified" him by failing "to disclose that he was not able or available to work *922 full time." The Commission reviewed, affirmed and adopted both decisions of the Tribunal. This appeal followed.
Standard of Review
When the Commission adopts the decision of the Tribunal, we consider the Tribunal's decision to be that of the Commission for purposes of our review. Ashford v. Div. of Emp't Sec. , 355 S.W.3d 538, 541 (Mo. App. 2011). The decision of the Commission may be modified, reversed, remanded for rehearing, or set aside by this Court if: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there is not sufficient competent evidence in the whole record to warrant the making of the award. § 288.210 RSMo (2000). "Determination of witness credibility is left to the Commission, not to the reviewing court." Reed v. Div. of Emp't Sec. , 469 S.W.3d 853, 856 (Mo. App. 2015). In determining whether sufficient competent evidence supports the award, or, in essence, whether the award is contrary to the overwhelming weight of the evidence, we do not view the evidence and inferences therefrom in the light most favorable to the award. Reed , 469 S.W.3d at 855 ; Johnson v. Div. of Emp't Sec. , 318 S.W.3d 797, 800 (Mo. App. 2010). "Instead, we must objectively review the entire record, including evidence and inferences drawn therefrom that are contrary to, or inconsistent with, the Commission's award." Johnson , 318 S.W.3d at 800 ; Reed , 469 S.W.3d at 855.
In deciding whether the Commission's decisions correctly apply the law, "we are not confined to its conclusions of law or its application of law to the facts." RPCS, Inc. v. Waters , 190 S.W.3d 580, 583 (Mo. App. 2006). "Each question receives independent review with no deference given to the Commission's determinations." Id . ; see Evans v. Div. of Emp't Sec. , 354 S.W.3d 220, 223-24 (Mo. App. 2011). Further, Missouri employment security law "shall be liberally construed to accomplish its purpose to promote employment security ... by providing for the payment of compensation to individuals in respect to their unemployment." § 288.020.2 RSMo (2000); Wester v. Missouri Dept. of Labor & Indus. Relations , 134 S.W.3d 757, 759 (Mo. App. 2004). "Therefore, disqualifying provisions in employment security law are strictly construed against the disallowance of benefits." Id .
Generally, a claimant bears the burden of demonstrating that he is entitled to unemployment benefits. Tamko Bldg. Products, Inc. v. Pickard , 443 S.W.3d 68, 70 (Mo. App. 2014). The applicable provision here is § 288.040, which provides that a claimant who is unemployed is eligible to receive benefits only if he is "available for work" and "able to work[.]" § 288.040.1(2).
Discussion and Decision
Claimant's first point contends the Commission misapplied the law by deciding that Claimant was ineligible for unemployment benefits because he was not "available for work" or "able to work." We agree.
Claimant was Available for Work
"The expression 'available for work' is not defined in Section 288.040.1(2) and it is not necessary nor desirable to attempt an inflexible definition because its meaning will vary depending upon the peculiar facts in each case." Wester , 134 S.W.3d at 759 ;
*923 see also Rives v. Labor & Indus. Rel. Comm'n , 592 S.W.2d 252, 253 (Mo. App. 1979) (available for work is not defined "for the reason that its meaning will vary dependent upon each claimant's circumstances"). While the expression "available for work" differs from case to case, a claimant must clearly hold a genuine attachment to the labor market and be able, willing, and ready to accept suitable work. Mo. Div. of Emp't Sec. v. Labor & Indus. Rel. Comm'n of Mo. , 651 S.W.2d 145, 151 (Mo. banc 1983) ; RPCS , 190 S.W.3d at 588.
Section 288.040.1(2) provides only that, to be "deemed available for work" the claimant must be "actively and earnestly seeking work." Id . This subsection of the statute goes on to excuse a claimant from "actively and earnestly seeking work" if he or she "has a definite recall date":
A claimant shall not be determined to be ineligible pursuant to this subdivision because of not actively and earnestly seeking work if: ... [t]he claimant is temporarily unemployed through no fault of his or her own and has a definite recall date within eight weeks of his or her first day of unemployment; however, upon application of the employer responsible for the claimant's unemployment, such eight-week period may be extended not to exceed a total of sixteen weeks at the discretion of the director[.]
§ 288.040.1(2)(b). Based upon this special exception, Claimant was neither required to look for other work, nor to accept other employment, during the recall period. The Division witness acknowledged that Claimant was excused from the work search requirement through April 2, 2016.[4]
Claimant contends the Commission misapplied the law by deciding that Claimant was not "available for work" unless he was seeking a 40-hour-per-week job. We agree. "[T]here simply is nothing in Missouri's unemployment compensation statutes requiring an unemployed person, in every instance, to seek exclusively a strict forty-hour-per-week work schedule for such a person to be deemed 'available for work.' " Reed v. Div. of Emp't Sec. , 469 S.W.3d 853, 856 (Mo. App. 2015). In Reed , the claimant was available Monday through Friday, 8:00 a.m. to 5:00 p.m., but was seeking employment of 30 hours or less per week so that she could care for her elderly parents. Id . at 854. The Commission denied unemployment benefits, finding that claimant "was unavailable for work because she was seeking only part-time work." Id . at 855. The western district of this Court reversed for the following reason:
Section 288.040 does not expressly mandate that the claimant must seek a forty-hour-per-week job in order to be determined eligible for benefits. " 'Available' for work is not defined in the statute for the reason that its meaning will vary dependent upon each claimant's circumstances." Rives v. Labor & Indus. Relations Comm'n , 592 S.W.2d 252, 253 (Mo. App. E.D. 1979). Thus, the Commission's legal conclusion that an unemployed person who is seeking "part-time" employment (whether or not thirty hours per week even constitutes "part-time" employment) is automatically ineligible for unemployment compensation is, as a matter of law, erroneous. Instead, the case law focuses on a variable meaning of "availability" depending upon the context *924 of unique circumstances of each unemployment compensation case.
Id . at 856 ; cf. Gardner v. Div. of Emp't Sec. , 369 S.W.3d 109, 112 (Mo. App. 2012) (job-seeker working "22 to 40 hours per week selling insurance" found ineligible for benefits by the Commission because she was working "substantially full-time").[5] The Reed court determined that the claimant there was "available for work" in any given work week because:
Claimant did not have any fixed times or blocks of time when she was not available for work in any given work week. She consistently demonstrated that she was available for work Monday through Friday, from 8:00 a.m. to 5:00 p.m. She only requested flexibility to deal with her parents' needs, if and when they arose. However, she was offering the same flexibility to her employer to be able to work most any time of the work week when she was needed by the employer. This apparently was not problematic in the Claimant's employment community, where both her job before she sought benefits and her job after the period for which she sought benefits allowed her these minor accommodations to attend to her parents' potential needs. Claimant demonstrated that, in the period during which she was unemployed, she was available to accept employment-whether thirty hours per week or more. Thus, where "availability for work" depends upon each claimant's circumstances, Rives , 592 S.W.2d at 253, we conclude that the circumstances and an objective review of the whole record of evidence in this case do not support the Commission's determination that Claimant was not available for work; instead, we conclude that an objective review of the circumstances and entire record of this case reflect that Claimant was, in fact, available for work as a matter of law.
Reed , 469 S.W.3d at 857 (emphasis in original; footnote omitted).
Applying the relevant statutes and case law to the facts in the case at bar leads us to the same conclusion. Claimant testified that he had no restrictions regarding days and times he was available to work. His only stated restriction was his monthly earnings limitation of $1,100 a month. The record established that, as a low-wage earner of $8.50 an hour, Claimant could work 30 hours per week and still stay under his earnings threshold in order to keep his SSDI. Thus, based on an objective review of Claimant's circumstances and the entire record, the Commission misapplied the law when it decided that Claimant was not available for work because he was "seeking part-time" employment.
Claimant next challenges the Commission's legal conclusion that his receipt of federal SSDI benefits meant he was not available for work. Claimant contends this conclusion was erroneous, and we agree. Eligibility for such benefits is based upon a specific, five-step analysis of whether the applicant can engage in "substantial *925 gainful activity[.]" See 20 C.F.R. §§ 404.1520, 416.920, 404.1572 ; Hillier v. Soc. Sec. Admin. , 486 F.3d 359, 363 (8th Cir. 2007). A person who meets this test is still permitted to earn some income without losing his or her eligibility for SSDI benefits. A recipient such as Claimant is deemed to have engaged in substantial gainful activity if his "earnings in a month are more than ... [a]n amount adjusted for national wage growth...." 20 C.F.R. 404.1592(b)(ii)(B). In 2016, a non-blind recipient of disability benefits was deemed to have engaged in substantial gainful activity if he or she earned $1,130 per month.[6] Thus, Claimant's testimony that he was able to earn around $1,100 per month was correct.
The argument that receipt of SSDI benefits automatically created a special presumption the recipient was unable to work was examined and rejected by the United States Supreme Court in Cleveland v. Policy Mgmt. Sys. Corp. , 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). The issue there was whether Cleveland's receipt of SSDI benefits created a form of judicial estoppel that precluded her from pursuing an Americans with Disabilities Act (ADA) claim. Id . at 797, 119 S.Ct. 1597. The Supreme Court held that the ADA claim could proceed if Cleveland could provide evidence that she could perform the essential functions of her previous job with reasonable accommodation, despite meeting the requirements for SSDI eligibility. Id . at 797-98, 119 S.Ct. 1597. As the Supreme Court explained, "an individual might qualify for SSDI under the SSA's administrative rules and yet, due to special individual circumstances, remain capable of 'perform[ing] the essential functions' of her job. Further, the SSA sometimes grants SSDI benefits to individuals who not only can work, but are working." Id . at 804-05, 119 S.Ct. 1597.[7] Because "there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side[,]" the entry of summary judgment against Cleveland was reversed. Id . at 802-03, 807, 119 S.Ct. 1597.
The Minnesota Court of Appeals addressed a similar issue in Huston v. Comm'r of Emp't & Econ. Dev. , 672 N.W.2d 606 (Minn. Ct. App. 2003). The issue there was whether a state statute, which declared that a person who filed for or received Social Security disability benefits was ineligible for unemployment benefits, violated the ADA. The appellate court ruled in favor of the claimant (relator) for the following reason:
Under Minnesota law, the only relevant factor that deemed relator retrospectively ineligible for unemployment compensation was his filing for SSDI benefits. But, filing for SSDI benefits does not require a statement by relator that he is unable to work. In fact, the United States Supreme Court has recognized that the SSA sometimes grants SSDI benefits to individuals who do work. See Cleveland , 526 U.S. at 805, 119 S.Ct. at 1603. Here, the SSA presumed that relator *926 was unable to work by virtue of his impairment without any inquiry into his actual work ability. Thus, relator's ineligibility for unemployment compensation benefits was based on filing for a federal disability benefit where a determination as to his ability to work is not required. Minn.Stat. § 268.085, subd. 4(c) creates an irrebuttable presumption that individuals who file for or receive SSDI benefits are unable to work. Without an opportunity to rebut that presumption, the Minnesota law effectively discriminates against disabled individuals who file for or receive SSDI benefits but are also able to work.
Id . at 610 (emphasis in original).
Finally, in Crawford v. Div. of Emp't Sec. , 376 S.W.3d 658 (Mo. banc 2012), the Supreme Court of Missouri explained that "SSDI regulations provide that a person can receive federal disability benefits even if he is able to engage in part-time work. Therefore, some recipients of SSDI benefits are entitled to Missouri unemployment benefits and others are not. " Id . at 662 (emphasis added).[8] In Crawford , the claimant's ineligibility for unemployment benefits was based not upon his receipt of SSDI benefits, but instead upon a factual finding that he had a mental impairment that made him unable to work. Id . at 663.
As Cleveland , Huston and Crawford illustrate, the mere receipt of SSDI benefits is not, by itself, determinative of the factual question of whether the recipient is either available for, or able to, work.[9] Therefore, we agree with Claimant that his receipt of SSDI benefits does not, ipso facto , disqualify him from receiving unemployment benefits. We find merit in the argument that, based on the relevant Missouri statutes and cases, Claimant was "available to work" by working 30 hours per week to earn no more than $1,100 per month and thereby maintain eligibility for both SSDI and unemployment benefits.
We are unpersuaded by the Division's contrary arguments. First, the Division argues SSDI and unemployment benefits are "mutually exclusive" and to claim both "adversely affects" a claimant's credibility, relying on Armour-Mottaz v. Div. of Emp't Sec. , 455 S.W.3d 40 (Mo. App. 2014), and Jernigan v. Sullivan , 948 F.2d 1070 (8th Cir. 1991). Both cases are factually distinguishable because they involved claimants who simultaneously applied for SSDI and unemployment. The conflict arose from factual statements, on the one hand, that the claimants were unable to work so as to be eligible for SSDI, and on the other hand, that the claimants were able to work so as to be eligible to collect unemployment.
*927 See Armour-Mottaz , 455 S.W.3d at 41 ; Jernigan , 948 F.2d at 1074. Here, Claimant was not applying for SSDI and unemployment benefits at the same time. Claimant was found eligible for SSDI over 30 years ago and was working in compliance with the applicable regulations to keep those benefits. Claimant's statements to the Social Security Administration and the Division are consistent, when viewed through the appropriate statutory and regulatory schemes applicable to each. Although Claimant cannot do the work that he once did before his accident, his receipt of SSDI benefits does not mean that he is either unable to work or unavailable for the low-wage, unskilled employment he had performed for Silver Dollar City. Indeed, Claimant's employment history with Silver Dollar City demonstrates that he does have the ability to work, and is available to work, notwithstanding his receipt of SSDI benefits. The Division presented no evidence whatsoever that the disability which led to Claimant's initial receipt of SSDI benefits had any negative effect on his ability to perform all assigned tasks at Silver Dollar City.[10]
Our conclusion that Claimant was "available for work" is reinforced by the particular facts giving rise to this claim. Thus far, we have analyzed the arguments based on a general review of case law relevant to the statutory requirement of being "available to work" in the context of a person who is required to be "actively and earnestly seeking work." § 288.040.1(2). This case turns on a different, and much narrower, issue. As noted earlier, Claimant had a specific recall date and was thus excused from the work search requirement for 13 of the 15 weeks at issue. See § 288.040.1(2)(b). According to the Division witness, the provision excusing Claimant from the work-search requirement was created for a seasonal employer's benefit in order to retain trained workers during downtimes. Despite the set recall date, the Division witness testified about an additional requirement that the employee still be "available for work" prior to that date. The Division has not cited, and we have not found, any statute or regulation imposing such a requirement upon an employee with a set recall date. There was no evidence presented here that Claimant was recalled on an earlier date. Instead, the record here unequivocally established that Silver Dollar City was closed during the week of Claimant's shoulder surgery. Except for the orientation session, which Claimant did attend, Silver Dollar City did not call Claimant back to work prior to the recall date.[11] Based upon our review of the entire record, Claimant was available to work within the meaning of § 288.040.1(2)(b).
*928 Claimant was Able to Work
Lastly, Claimant challenges the Commission's legal conclusion that Claimant was not "able to work" because "[d]uring the weeks of February 28, 2016, through April 16, 2016, claimant was restricted from working while he had shoulder surgery and was under a doctor's care during his recovery." Claimant contends this conclusion is based upon a misapplication of the law because: (1) Claimant had a recall date; (2) the park was closed during his shoulder surgery; (3) there was no documentation in the record that Claimant was completely restricted from working after his shoulder surgery; (4) Claimant performed non-specialized, light custodial work at Silver Dollar City; (5) generally, employers often accommodate lifting and other medical restrictions; (6) Claimant was able to perform any suitable work; and (7) Silver Dollar City retained him as an employee during the recall period, but did not call him back. This argument has merit.
Like being available to work, "[t]he expression 'able to work' is not defined in section 288.040.1(2)." Sheridan v. Div. of Emp't Sec. , 425 S.W.3d 193, 200 (Mo. App. 2014). Though usually discussed in the context of an "available to work" determination, courts have held that the application of the "able to work" provision "differs from case to case" and that "a claimant must clearly possess a genuine attachment to the labor market and be able, willing, and ready to accept suitable work." Mo. Div. of Emp't Sec. , 651 S.W.2d at 151 ; Sheridan , 425 S.W.3d at 200. "[S]tatutory language denying an employee benefits unless he or she is 'able to work' under section 288.040.1(2) must be construed in light of the policy expressed by the legislature in section 288.010." Sheridan , 425 S.W.3d at 200. Disqualifying provisions of the Act are strictly construed against disallowance of compensation. Mo. Div. of Emp't Sec. , 651 S.W.2d at 148 ; see, e.g. , Sheridan , 425 S.W.3d at 200 (reversing ineligibility determination that a mother was unable to work for six weeks solely due to childbirth and her failure to present medical evidence that she was able to work).
Because we are required to strictly construe disqualifying provisions and the question of whether a claimant is "able to work" is an individualized determination, our review of the entire record leads us to conclude that Claimant was "able to work" in this case. The Commission's opposite conclusion was based upon a misapplication of the law. Our review of the entire record reveals that: (1) Claimant had a specific recall date; (2) the park was closed during the recall period, except for orientation; (3) Silver Dollar City did not call Claimant back; and therefore (4) the condition of his right arm never actually prevented him from performing any task for Silver Dollar City. Accordingly, the lifting restrictions for Claimant's right arm-during a time period when he was neither required nor requested to perform any act for his employer-did not disqualify him from receiving unemployment benefits during the recall period.[12] We further note that, after the recall period ended, Claimant did make his necessary work search contacts, and he was not disqualified from receiving benefits on that basis.
*929 Based upon our review of the entire record here, we conclude that Claimant held a genuine attachment to the labor market and was "able, willing, and ready to accept suitable work." See Mo. Div. of Emp't Sec. , 651 S.W.2d at 151 ; Sheridan , 425 S.W.3d at 200. The Commission's contrary conclusions were based upon a misapplication of the law. Point 1 is granted.
The Commission's decision that Claimant was ineligible to receive unemployment benefits from January 3 through April 16, 2016 is reversed. Because Claimant was entitled to benefits during that period, we also reverse the Commission's decisions that: (1) Claimant was overpaid; and (2) he is liable for a 25% penalty.[13]
The Commission's decision is reversed and the cause is remanded for entry of an appropriate order, consistent with this opinion, awarding Claimant unemployment benefits.
DON E. BURRELL, J.-CONCUR
MARY W. SHEFFIELD, C.J.-CONCUR

All references to statutes are to RSMo Cum. Supp. (2013) unless otherwise indicated.

In an August 2016 statement, Claimant said, "I was available for work all the times needed for any job. ... I was not required to look for any other position until April, 2016 (when prompted by the automated system). During this time, I did have a shoulder surgery, however, was never told I could not work, I just had restrictions using my right arm for a few weeks (during the time the park was closed for the season)."

At the telephone hearing, the deputy also heard the Division witness' testimony, much of which has been recounted here.

While the work search requirement did apply from April 2 through April 16, 2016, the Commission did not base its conclusion that Claimant was unavailable for work on any failure to comply with the work search requirements.

Gardner was reversed because the eastern district of this Court determined that the claimant was eligible for benefits, based on the overwhelming weight of the evidence establishing that the claimant worked far fewer than 22-40 hours per week and did not work at all some weeks. Id . at 113. As later noted by the western district in Reed , the eastern district "did not conclude, however, that the Commission's determination that 22-40 hours per week would have been substantially full time was an erroneous finding by the Commission." Reed , 469 S.W.3d at 856 n.3.

See Social Security Administration (SSA), Substantial Gainful Activity , www.ssa.gov/oact/cola/sga.html (last visited March 15, 2018); see also In re Marriage of Lindhorst , 347 S.W.3d 474, 476 (Mo. banc 2011), as modified on denial of reh'g (Aug. 30, 2011) (relying on a substantial gainful activity amount in 2011 of $1,000).

As the Supreme Court noted, "An SSA representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely, 'I am disabled for purposes of the Social Security Act.' " Id . at 802, 119 S.Ct. 1597.

Citing Crawford , 376 S.W.3d at 662 n.1, the Division mistakenly argues that Claimant is also subject to an 80-hour-per-month limitation. What 20 C.F.R. § 404.1592 actually says is that the "80 hours a month" language is an additional limitation that only applies to "a self-employed" person. 20 C.F.R. § 404.1592(b)(2)(ii). An "employee" such as Claimant is limited only to a certain amount of earnings per month "adjusted for national wage growth," which in Claimant's case is the substantial gainful activity limit of $1,130 per month. 20 C.F.R. § 404.1592(b)(1)(ii)(B) ; see Lindhorst , 347 S.W.3d at 476 ; SSA, Substantial Gainful Activity , www.ssa.gov/oact/cola/sga.html (last visited March 15, 2018).

In Missouri, a claimant's ability to receive both SSDI and unemployment benefits is permitted pursuant to § 288.040.4(3). In relevant part, this subsection states that: "if a claimant has contributed in any way to the Social Security Act or the Railroad Retirement Act of 1974, or the corresponding provisions of prior law, no part of the payments received pursuant to such federal law shall be deductible from the amount of benefits received pursuant to this chapter." Id .

The Division's blanket, and erroneous, legal conclusion that a SSDI recipient is never going to be capable of any kind of employment is in direct conflict with all of the SSA's programs and incentives designed to help individuals with disabilities become employed while maintaining their eligibility for benefits. See SSA, 2016 Red Book , 11 (January 2016), www.ssa.gov/redbook/documents/TheRedBook2016.pdf. Individuals with disabilities are encouraged to attempt work and are provided with supports and incentives to gradually become self-supporting and independent. Id . Claimant's use of vocational supports, like his job coach and case manager for his traumatic brain injury, indicate his desire and willingness to be successful in his employment pursuits.

In the absence of evidence that a claimant was recalled early and was either unavailable for work or unable to work, the Division's imposition of such an arbitrary requirement to be available is not even logical because the recall date exception keeps those employees out of the labor pool for the employer's benefit.

Because these undisputed facts are determinative of the legal issue, the Commission's factual finding that Claimant could not work as a laborer during the recall period is irrelevant.

Because the Commission erred in concluding that Claimant was ineligible for unemployment benefits the entire period because he was not available for "full time work," Claimant cannot be penalized for "willfully fail[ing] to disclose or falsif[ying] facts that would have disqualified" him on the ground that he failed "to disclose that he was not able or available to work full time."